**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| BEARD INTEGRATED SYSTEMS, INC., | § | |
| | § | |
| Plaintiff/Counter-Defendant, | § | |
| | § | |
| v. | § | Case No. 1:24-CV-814-DAE |
| | § | |
| SAMSUNG AUSTIN SEMICONDUCTOR, LLC, | § | |
| | § | |
| | § | |
| Defendant/Counter-Plaintiff. | § | |

**DEFENDANT SAMSUNG AUSTIN SEMICONDUCTOR, LLC'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Defendant/Counter-Plaintiff Samsung Austin Semiconductor, LLC ("Samsung") moves for partial summary judgment under Federal Rule of Civil Procedure 56 on the following causes of action asserted by Plaintiff/Counter-Defendant Beard Integrated Systems, Inc. ("Beard") in its First Amended Complaint (Dkt. 51): fraud by nondisclosure (Count I), fraudulent inducement (Count II), breach of contract (Count IV), negligent misrepresentation (Count VIII), and Beard's request for attorneys' fees (Count IX) to the extent it rests on those claims. In support, Samsung shows as follows:[1]

## INTRODUCTION

Beard performed demolition and installation work at Samsung's semiconductor factory under an agreement that demolition would be paid on a time-and-materials basis and installation on a unit-rate basis—that is, a fixed rate per unit installed. Beard initially sued for quantum meruit

[1] Samsung's Rule 12(b)(6) Motion to Dismiss these claims (Dkt. 55) remains pending. Samsung files this Motion for Summary Judgment without prejudice as to Samsung's arguments in the Motion to Dismiss. No facts referenced herein undercut the arguments for dismissal in Samsung's Motion to Dismiss, on which Samsung requests a ruling alongside this Motion for Summary Judgment.

(or, alternatively, breach of contract), even though under the Parties' agreement *Beard owes Samsung* more than $700,000 due to Samsung's overpayment of estimated amounts. Beard later amended its complaint to add claims for fraud by nondisclosure, fraudulent inducement, and negligent misrepresentation. Dkt. 51 ¶¶ 48–61, 88–89. Those claims fail as a matter of law for the reasons set forth in Samsung's pending motion to dismiss, Dkt. 55, and months of discovery have revealed no factual basis for those claims either.

**Fraud by nondisclosure (Count I).** This count fails because Samsung owed Beard no duty to disclose in this arm's-length process, the undisputed evidence shows Samsung did not have the information Beard claims should have been disclosed, and there is no evidence of any intent to withhold.

**Fraudulent inducement (Count II).** Fraudulent inducement requires the existence of a contract that the plaintiff asserts was wrongfully induced. But Beard has pleaded—and its corporate representative has now sworn—that no contract existed and that the Parties "never had a deal." Fraudulent inducement cannot lie in such circumstances.

**Negligent misrepresentation (Count VIII).** This count is barred by the two-year statute of limitations. Every alleged misrepresentation was made in 2021—more than two years before Beard filed its Original Petition on January 8, 2024, let alone before it first asserted this claim on March 30, 2026. Beard's own witnesses confirm that Beard perceived "red flag[s]" in early 2021, foreclosing any discovery-rule argument.

**Breach of contract (Count IV).** Beard alternatively pleads an oral contract under which Samsung would pay Beard a "fair and reasonable amount." Dkt. 51 ¶ 70. But Beard's corporate representative testified that no contract existed, and the only pricing terms Beard's witnesses acknowledge—time-and-materials for demolition and unit rates for installation—are different.

**Attorneys' fees (Count IX).** Beard's fee claim fails along with the underlying counts.

For these reasons, Samsung respectfully asks the Court to grant summary judgment on Counts I, II, IV, and VIII, and on Count IX to the extent it is premised on those claims.

## FACTUAL BACKGROUND

In 2020, Samsung initiated the 14nm 72K Tool Hookup Project (the "Project") to demolish and install semiconductor manufacturing tools at its Austin, Texas facility, and it began soliciting for contractors in September 2020. Declaration of Matt Jester ("Declaration"), attached as **Exhibit 1**, at ¶ 3. Semiconductor fabrication "tools" are large, complex, self-contained robotic apparatuses—some as large as a city bus and costing hundreds of millions of dollars—that must be changed out when the factory makes a different type of chip. Declaration at ¶ 5. Most of the work is commercial electrical, mechanical, and piping dismantling and installation of the sort performed on any commercial job. Declaration at ¶ 5. Electrical and mechanical contractors are not hired for a specific tool or task, but rather they are hired to be available to do electrical and mechanical work as needed when tools are assigned during the process. Declaration at ¶ 5.

Demolition work is paid on a time and materials basis; installation work is paid at standard unit rates (e.g., $X to install 1 foot of electrical conduit or $Y to install a junction box) that account for site conditions (clean room, heights, etc.) and pace of work (40-hour weeks, 80-hour weeks, etc.). Declaration at ¶ 6. The unit rates are set this way because no one can know exactly what work a given contractor will be called on to do until the job progresses. Declaration at ¶ 6. Thus, contractors don't "bid" for "jobs" or "projects" at Samsung for tool demo and hookup like one might imagine a contractor bidding to build a house or an office building. Declaration at ¶ 6. Think of the Project as a huge unpainted wall: Samsung hires ten painters, each quoting a price to paint one square foot. Samsung assigns sections as they become ready to paint, and each painter is paid

by the square feet painted. Declaration at ¶ 6. The overall project "schedule" is irrelevant to the unit prices. Declaration at ¶ 6.

Beard is a sophisticated commercial contractor. It has been in business since 1928, currently has close to 600 employees and annual revenues of approximately $150 to $170 million, and had approximately 300 to 350 workers when it submitted rates on the Project. Wells Dep. Tr. ("Wells"), excerpts attached as **Exhibit 2**, at 31:22–32:8, 163:3–5. Before working on the Project, Beard had performed at least 50 tool-installation projects "of this nature and of this scale," for clients including Tesla, Texas Instruments, GlobalFoundries, GlobalWafers, and Micron. Wells at 33:9–23, 164:25–165:7. Its corporate representative described Beard as "relatively sophisticated." Wells at 32:25–33:3.

Beard submitted rates knowing that the Project had no schedule, scope, drawings, and without a full understanding of site conditions, and it prepared its rates based on its own internal assumptions. Wells at 31:11–21, 34:2–8. Beard knowingly prepared its rates based on its own internal assumptions, fully aware that total certainty was impossible at the time Beard submitted unit rates. Wells at 31:11–21, 34:2–8. Its corporate representative called preparing rates under those conditions "a pretty substantial risk," Wells at 183:7–13, and admitted Beard "[a]bsolutely" could have walked away, Wells at 35:8–12, 36:7–9. Beard carried on anyway with the aim of "get[ting] more work from [Samsung]." Webb Dep. Tr. ("Webb"), excerpts attached as **Exhibit 3**, at 83:23–84:2.

The record confirms that Samsung did not have the information Beard was asking for at the time Beard submitted its rates. Beard's corporate representative testified that "[c]ommunications from Samsung both verbally and in writing stated they could not get that information together," Wells at 48:4–6, and he agreed it was "100 percent true" that Samsung said

it did not have all the information and that its team was working on it. Wells at 69:3–9, 69:24–70:4. Wells further conceded that "[i]f [Samsung] did not have the information, then I don't believe that they . . . would have committed fraud." Wells at 66:19–25.

The reason why Samsung did not provide the requested information to Beard is simple: that information did not yet exist. Samsung could not provide a comprehensive schedule to Beard before Beard submitted its rates because Samsung did not know the order in which the tools would be ready for Beard to work on or even when they would arrive. *See* Declaration at ¶¶ 7–12. Which tool would be Beard's next priority depended on when other contractors completed their work, the needs of the factory, Beard's availability, and arrival of the tools, which Samsung could not know in advance. *See* Declaration at ¶¶ 8–10. Indeed, there was no final "schedule" until the last tool was started. *See* Declaration at ¶ 12.

Beard's own witnesses agree that Samsung did not intentionally conceal material information. Beard employee Curt Webb, who worked on Beard's submissions, testified that he is not aware of any false representations Samsung made to Beard, nor of any intention by Samsung to withhold important facts to induce Beard to submit rates using inappropriate rates and factors. Webb at 264:8–15, 264:24–265:5. He also does not know whether any Samsung employee knowingly made a false representation. Webb at 252:13–18, 253:7–15. Ed Filla, Beard's Vice President of Electrical, testified that he had no knowledge of any information withheld: "I don't know if they held it back. They just didn't have the information completed at the time." Filla Dep. Tr. ("Filla"), excerpts attached as **Exhibit 4**, at 155:4–13.

No written contract was ever signed by both Parties. Wells at 191:12–18 ("there was no written agreement"); Webb at 247:14–17; Filla at 37:20–24. But even though no written contract existed, the Parties exchanged specific rate proposals and "agreed to [time-and-materials] for

demolition and unit rate for installation." Wells at 194:14–17. Indeed, once Beard submitted its rates, Samsung "came back and agreed with those rates based on the information [Samsung] provided, and that's how [Beard] proceeded." Wells at 178:9–13. Samsung issued purchase orders and assigned tools to Beard, which Beard completed and invoiced per the parties' rate-structure agreement. Wells at 268:21–269:5; Declaration at ¶ 20.

Shortly after mobilizing in early 2021, Beard could not get badges for its workers and "there were still not packages available," which its corporate representative admitted "was a red flag." Wells at 44:4–10. Although Beard concedes that "[a]t any point in time" it "had the right and the ability to stop its services," Wells at 45:8–11, it continued to perform and invoice under the parties' rate structure, Wells at 73:22–74:2 (noting "one minor rate adjustment towards the end of the project"). After being paid over $18.4 million, Declaration at ¶ 21, Beard filed its Original Petition on January 8, 2024, demanding reimbursement for every penny it spent on the job, regardless of the Parties' deal. *See* Dkt. 1, App. A. Beard filed its First Amended Complaint on March 30, 2026, and Samsung moved to dismiss. Dkts. 51, 55.

## **LEGAL STANDARD**

Summary judgment is proper when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–52 (1986). A defendant may meet its burden by negating a material element of the plaintiff's claim or by showing there is no evidence to support an essential element. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The nonmovant must then identify specific record evidence and articulate precisely how it supports its claim. *See Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). Conclusory allegations, unsupported speculation, or a scintilla of evidence are insufficient. *See Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996); *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994).

## SUMMARY JUDGMENT EVIDENCE

Samsung attaches the following exhibits in support of this motion, which are incorporated by reference:

| | |
|---|---|
| Exhibit 1: | Declaration of Matthew Jester, Senior Manager of Facilities Services, Samsung Austin Semiconductor, LLC (the "Declaration") |
| Exhibit 2: | Excerpts from the deposition of Bertram Blodgett Wells, III, Beard's Rule 30(b)(6) corporate representative (Oct. 2, 2026) |
| Exhibit 3: | Excerpts from the deposition of Curt Webb (Aug. 13, 2026) |
| Exhibit 4: | Excerpts from the deposition of Ed Filla (Aug. 11, 2026) |
| Exhibit 5: | Beard's First Amended Objections and Answers to Defendant's Interrogatories |

## ARGUMENTS & AUTHORITIES

### I. Samsung is entitled to summary judgment on Beard's claim for fraud by nondisclosure (Count I).

"Fraud by non-disclosure is a subcategory of fraud that occurs when a party has a duty to disclose certain information and fails to disclose it." *In re Marriage of Moncur*, 640 S.W.3d 309, 317 (Tex. App.—Houston [14th Dist.] 2022, no pet.). The plaintiff must prove that:

(1) the defendant failed to disclose facts to the plaintiff,

(2) the defendant had a duty to disclose those facts,

(3) the facts were material,

(4) the defendant knew the plaintiff was ignorant of the facts and the plaintiff did not have an equal opportunity to discover the facts,

(5) the defendant was deliberately silent when it had a duty to speak,

(6) by failing to disclose the facts, the defendant intended to induce the plaintiff to take some action or refrain from acting,

(7) the plaintiff relied on the defendant's nondisclosure, and

(8) the plaintiff was injured as a result of acting without that knowledge.

*Horizon Shipbuilding, Inc. v. Blyn II Holding, LLC*, 324 S.W.3d 840, 849–50 (Tex. App.—Houston [14th Dist.] 2010, no pet.).

Here, the law and record negate at least the first, second, fourth, fifth, sixth, and seventh elements.

**A. Samsung had no duty to disclose information to Beard.**

"Whether . . . a duty exists is a question of law." *Bradford v. Vento*, 48 S.W.3d 749, 755 (Tex. 2001). "Under Texas law, in the absence of a duty to disclose, mere silence does not amount to fraud or misrepresentation; and a duty to disclose arises only where a fiduciary or confidential relationship exists." *Imperial Premium Fin., Inc. v. Khoury*, 129 F.3d 347, 352 (5th Cir. 1997); *accord United Teacher Assocs. Ins. Co. v. Union Lab. Life Ins. Co.*, 414 F.3d 558, 566 (5th Cir. 2005); *Stone v. FINRA*, 694 F. Supp. 3d 774, 793 n.6 (E.D. Tex. 2023).

Beard does not contend that it had a fiduciary or confidential relationship with Samsung, and the record shows the opposite: Beard was one of several arm's-length vendors that could decline to participate, withdraw its rate submission before acceptance, or stop work at any time. Wells at 35:8–12, 36:7–14, 45:8–11. And Beard is a sophisticated contractor, in business since 1928, that had performed at least 50 comparable tool-installation projects before bidding. Wells at 31:22–32:8, 164:25–165:7. This undisputed fact entitles Samsung to summary judgment on Count I.

Beard may argue that a duty arises from a partial disclosure that creates a false impression, under *Bombardier Aerospace Corp. v. SPEP Aircraft Holdings, LLC*, 572 S.W.3d 213, 219–20 (Tex. 2019). But the Texas Supreme Court has never adopted that rule; its discussion in *Bombardier* is dicta. More importantly, the Fifth Circuit, whose rulings *do* bind this Court, has "clarified the confidentiality/fiduciary relationship element ***was required to plead fraud by omission***." *Stone*, 694 F. Supp. 3d at 793 n.6 (citing *United Teacher Assocs. Ins. Co. v. Union Lab.*

*Life Ins. Co.*, 414 F.3d 558, 567 (5th Cir. 2005) ("Courts in Texas have consistently held that fraud by nondisclosure or concealment requires proof of all of the elements of fraud by affirmative misrepresentation, including fraudulent intent, with the exception that the misrepresentation element can be proven by the nondisclosure or concealment of a material fact in light of a duty to disclose.")).

Even if a partial-disclosure duty could exist outside a fiduciary relationship, none arose here. Asked to identify the source of Samsung's supposed obligation to provide scope, schedule, drawings, and site-condition information, Beard's corporate representative offered only his own opinion that the request for proposal "should" have included it. Wells at 61:19–62:22. He did not explain why any of that would be material to setting a unit rate price because it isn't.

And far from creating a false impression, Samsung told Beard, "both verbally and in writing," that "they could not get that information together" and that it was working on it. Wells at 48:4–6, 69:3–9, 69:24–70:4. A disclosure that information is not yet available cannot create a false impression that it exists but is being withheld. The record therefore reflects an ordinary exchange of incomplete information between an owner and vendors on a construction project. That's business, not fraud. Samsung did not know in advance the specific schedule or the order in which Beard would have to work on each tool, which is typical for projects like this. Declaration at ¶ 9. Texas law does not make project owners the insurers of their contractors' financial success.

**B. There is no evidence that Samsung knowingly concealed facts with intent to induce Beard.**

Fraud by nondisclosure requires that the defendant knew the undisclosed facts and was deliberately silent with intent to induce the plaintiff to act. *Horizon Shipbuilding*, 324 S.W.3d at 849–50. Beard has no evidence of either.

Beard's corporate representative conceded the dispositive point: "If they did not have the information, then I don't believe that they . . . would have committed fraud." Wells at 66:19–25. He likewise agreed that if Samsung did not know about the schedule changes, Samsung had no "intent to induce Beard to enter into an agreement on the terms that it didn't think was appropriate." Wells at 100:9–15. And he conceded that the schedule changes he identified were conveyed to Beard during construction; they were not withheld. Wells at 99:21–100:4.

The undisputed evidence shows that Samsung *did not have* the information Beard says was withheld. Wells at 48:4–6. Beard's corporate representative agreed that it was "100 percent true" that Samsung said it did not have all the information and was working on it. Wells at 69:3–9, 69:24–70:4. Beard's Vice President of Electrical testified: "I don't know if they held it back. They just didn't have the information completed at the time." Filla at 155:9–13. Samsung agrees. Declaration at ¶¶ 16–19. Because Beard's work on any given tool could begin only after other contractors finished theirs, the schedule was not final until the last tool was started—and so could not have been provided before Beard bid. Declaration at ¶¶ 7–12.

Beard's conclusory allegation that Samsung must have had more information rests on nothing but its corporate representative's assumption, drawn from his "experience in tool install." Wells at 48:11–20, 68:7–24. But speculation of that kind is not evidence and cannot defeat summary judgment. *Eason*, 73 F.3d at 1325. Moreover, it would make no sense for Samsung to withhold information from its contractors longer than necessary, as Samsung wanted contractors working on its tools as quickly as possible. Declaration at ¶¶ 16–17.

Nor is there any evidence of intent to deceive: the preparer of Beard's unit rate proposal, Mr. Webb, knows of no false representation by Samsung or any intention to withhold important facts. Webb at 264:8–15, 264:24–265:5; Declaration at ¶¶ 16–19. Summary judgment is proper.

### C. Beard cannot show justifiable reliance in light of its arm's-length relationship with Samsung, its sophistication and experience, and its admitted awareness of supposed "red flags."

Justifiable reliance turns on the nature of the parties' relationship and the parties' sophistication. *See JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*, 546 S.W.3d 648, 654, 656 (Tex. 2018). "In an arm's-length transaction the defrauded party must exercise ordinary care for the protection of his own interests," and a "failure to exercise reasonable diligence is not excused by mere confidence in the honesty and integrity of the other party." *Nat'l Prop. Holdings, L.P. v. Westergren*, 453 S.W.3d 419, 425 (Tex. 2015) (citation omitted). "[A] person may not justifiably rely on a misrepresentation if there are 'red flags' indicating such reliance is unwarranted." *JPMorgan*, 546 S.W.3d at 655 (quoting *Grant Thornton LLP v. Prospect High Income Fund*, 314 S.W.3d 913, 923 (Tex. 2010)). Although justifiable reliance is ordinarily a fact question, a court may determine it as a matter of law. *JPMorgan*, 546 S.W.3d at 654; *Barrow-Shaver Res. Co. v. Carrizo Oil & Gas, Inc.*, 590 S.W.3d 471, 501 (Tex. 2019).

First, Samsung and Beard dealt at arm's length, each acting in its own interest. *See Dunigan v. United States*, No. 1-348, 1969 WL 188, at *5 (N.D. Tex. Aug. 18, 1969), *aff'd*, 434 F.2d 892 (5th Cir. 1970) ("An arm's length transaction is one wherein each party is striving for the best possible bargain for himself"). In *Crawford Painting & Drywall Co. v. J.W. Bateson Co.*, 857 F.2d 981 (5th Cir. 1988), the Fifth Circuit rejected a subcontractor's fraud claim where the parties "had a sophisticated business relationship and dealt with each other at arms length." *Id.* at 986. So too here: Beard prepared its rates based on its own internal assumptions and was free to walk away without participating at all. Wells at 31:11–21, 35:8–12, 36:7–14. There can be no justifiable reliance in this context.

Second, Beard is a sophisticated, nearly century-old contractor that had worked on "a minimum of 50 … tool hookup or installation projects … of this nature and of this scale" before

2020. Wells at 31:22–32:8, 163:3–5, 164:25–165:7. It was not relying on Samsung's experience in lieu of its own.

Third, the undisputed evidence establishes the red flags Beard saw and disregarded. As a sophisticated contractor, Beard knew that unit-rate work "places the risk of efficient performance on the contractor" and that contractors are "wary" of it for that reason. Dkt. 51 ¶¶ 7–8. Nevertheless, Beard submitted rates knowing it lacked a schedule, scope, drawings, and site information—what its corporate representative called "a pretty substantial risk"—while Samsung was telling Beard it did not yet have that information. Wells at 31:11–21, 34:2–22, 48:4–6, 69:3–9, 183:7–13. Beard also willingly began work without a signed Master Services Agreement or letter of intent. Dkt. 51 ¶¶ 20–21; *see Roxo Energy Co., LLC v. Baxsto, LLC*, 713 S.W.3d 404, 410 (Tex. 2025) (a lack of a written agreement reflecting the parties' agreement "is itself a red flag negating justifiable reliance"). And Beard's corporate representative admitted that, upon mobilization in early 2021, the lack of badges and tool packages "was a red flag"—yet Beard kept working, though it could have stopped at any time. Wells at 44:4–10, 45:8–11.

In summary, Beard cannot show justifiable reliance where it admits awareness of its own lack of information. A party cannot rely on information that it knows it does not have. Beard knew it had no schedule, scope, drawings, or full understanding of site conditions, and it said so to Samsung before submitting unit rates. Wells at 31:11–21, 34:2–22; *see also* Dkt. 51 ¶¶ 12, 14 (conceding information gaps "required [Beard] to make certain assumptions"). It understood these gaps posed "a pretty substantial risk." Wells at 183:7–13. And Samsung told Beard the information was not yet available. Wells at 48:4–6, 69:3–9. Beard knew of these supposed issues but nevertheless submitted rates on the Project and, ultimately, completed its work on the Project.

Beard made a calculated business decision with full knowledge of the risks. Any supposed reliance on Samsung was not justifiable.

## II. Samsung is entitled to summary judgment on Beard's claim for fraudulent inducement (Count II).

Fraudulent inducement requires proof of the elements of fraud: (1) a material misrepresentation; (2) that was false; (3) that the defendant knew was false or made recklessly without knowledge of its truth; (4) that the defendant intended the plaintiff to rely on, and on which the plaintiff actually relied; and (5) that caused injury. *Kevin M. Ehringer Enters., Inc. v. McData Servs. Corp.*, 646 F.3d 321, 325 (5th Cir. 2011). "Fraudulent inducement . . . is a particular species of fraud that arises only in the context of a contract and requires the existence of a contract as part of its proof." *Haase v. Glazner*, 62 S.W.3d 795, 798 (Tex. 2001). "When a party has not been induced into a contract . . . there is no detrimental reliance and therefore no fraudulent inducement claim." *Haase*, 62 S.W.3d at 798; *see also Holloway v. Dekkers*, 380 S.W.3d 315, 325 (Tex. App.—Dallas 2012, no pet.). By Beard's own account, it submitted unit rates, mobilized, and performed its work on the Project without ever signing a contract, and it was paid over $18.4 million by Samsung along the way. Wells at 31:11–21, 191:12–18, 268:21–269:5; Declaration at ¶ 21. Fraudulent inducement cannot exist on this record.

### A. Beard's judicial admissions and sworn testimony establish that, according to Beard, no contract was induced.

Beard alleges that no written contract exists between Samsung and Beard. Dkt. 51 ¶ 21 ("Beard began performing work without a written executed contract and without receiving an LOI. One thing led to another, and the parties never entered into a written agreement."), ¶ 40 (Beard continued working "even though it had no signed contract"). "[F]actual assertions in pleadings are … judicial admissions *conclusively* binding on the party that made them." *Davis v. A.G. Edwards*

*& Sons, Inc.*, 823 F.2d 105, 108 (5th Cir. 1987) (emphasis added). Where there is no contract, there can be no fraudulent inducement.

Discovery confirms Beard's admissions. Beard's corporate representative testified consistently with Beard's Complaint that he believes a contract for the Project "did not exist," Wells at 192:6–8, that the Parties "never had a deal," Wells at 195:25–196:2, and that "there was no written agreement."[2] Wells at 191:12–18. Beard also identifies no evidence that it entered into any binding agreement in reliance on a misrepresentation; it alleges only that it relied on alleged misrepresentations "when it submitted its bid on the Project and continued its work on the Project." Dkt. 51 ¶ 60.

**B. Beard cannot show justifiable reliance.**

Even if there were a contract that was fraudulently induced (which there was not), Beard cannot show that it justifiably relied on any material misrepresentation made by Samsung. *See supra* Section I.C. Beard submitted unit rates with its eyes open, knowing full well it could walk away at any time. Wells at 36:7–9. Beard understood it lacked a schedule, scope, drawings, and site information and called that "a pretty substantial risk." Wells at 34:2–8, 183:7–13. A fraudulent inducement claim has no basis in this case.

**III. Samsung is entitled to summary judgment on Beard's claim for negligent misrepresentation (Count VIII).**

**A. Beard's negligent-misrepresentation claim is barred by limitations.**

Negligent misrepresentation is subject to a two-year statute of limitations. Tex. Civ. Prac. & Rem. Code § 16.003; *Tex. Am. Corp. v. Woodbridge Joint Venture*, 809 S.W.2d 299, 303 (Tex.

[2] Samsung maintains, consistent with its Counterclaims, that the Parties' agreement called for time-and-materials pricing for demolition and unit-rate pricing for installation. Samsung's argument for summary judgment herein relies on Beard's own admissions; it does not concede Beard's position that no contract exists.

App.—Fort Worth 1991, writ denied). The claim accrues when the alleged misrepresentation is made, even if the fact of injury is not discovered until later and even if all resulting damages have not yet occurred. *Smith Int'l, Inc. v. Egle Grp., LLC*, 490 F.3d 380, 385 (5th Cir. 2007); *W. Fork Partners, L.P. v. Chesapeake Expl., LLC*, 2009 WL 2252505, at *4 (N.D. Tex. July 29, 2009). Beard's negligent misrepresentation claim is plainly time-barred.

Every alleged misrepresentation occurred in 2021: the January 2021 statements about crew size and tool availability; Mr. Lynch's January and February 2021 statements; the March 31, 2021 rate recommendations; Mr. Gernert's April 6, 2021 statement; Mr. Jester's April 9, 2021 statement; Ms. Parsons's April 21, 2021 statement; and the payment assurances through late summer 2021. Dkt. 51 ¶¶ 10, 12–16, 18–20, 26–28, 30, 40, 57. Beard's corporate representative likewise placed Mr. Lynch's statement in the pre-construction phase in "2021. Probably January." Wells at 72:19–73:1. Beard first asserted negligent misrepresentation on March 30, 2026—more than four years later. Dkt. 51. Even if the claim related back to the Original Petition, that petition was filed on January 8, 2024, Dkt. 1, which is also more than two years after every alleged misrepresentation.

The discovery rule does not save this claim. Under Texas law, the discovery rule applies only in exceptional cases in which the injury is "both inherently undiscoverable and objectively verifiable." *Smith v. Travelers Cas. Ins. Co. of Am.*, 932 F.3d 302, 312 (5th Cir. 2019); *TIG Ins. Co. v. Aon Re, Inc.*, 521 F.3d 351, 358 (5th Cir. 2008). Economic harm from alleged misrepresentations about a commercial arrangement is not inherently undiscoverable where, as here, the plaintiff could have confirmed "the facts and assumptions on which the bargain was to be based." *TIG*, 521 F.3d at 358.

Here, nothing about Beard's alleged injury was hidden. Beard knew of the alleged information gaps before it submitted its unit rate proposal, Wells at 31:11–21, 34:2–22, 183:7–13,

and their alleged consequences were apparent when it mobilized in early 2021—its corporate representative called the lack of badges and tool packages "a red flag." Wells at 44:4–10, 183:21–184:17. The preparer of Beard's unit rate proposal likewise came to feel misled "later that year," that is, in 2021. Webb at 253:16–22. Beard was on notice of its alleged injury more than two years before it filed its Original Petition on January 8, 2024, let alone before it first asserted negligent misrepresentation on March 30, 2026. This claim is time-barred.

**B. Beard cannot show justifiable reliance.**

Justifiable reliance is also an element of negligent misrepresentation. *JPMorgan*, 546 S.W.3d at 654; *Willis v. Marshall*, 401 S.W.3d 689, 699 (Tex. App.—El Paso 2013). For the reasons explained in Section I.C, Beard cannot establish justifiable reliance as a matter of law.

**C. Beard disclaims negligence and asserts only intentional conduct.**

Beard pleads negligent misrepresentation only in the alternative, "[i]f the misrepresentations by Samsung were not intentional (as Beard asserts)." Dkt. 51 ¶ 89. But when Beard's corporate representative was asked whether Samsung's alleged misrepresentations were "intentional or negligent," he answered "I think it was intentional" and testified that Samsung "completely misled us with intent." Wells at 148:4–7, 148:22–24. He then confirmed that Samsung intended every misrepresentation Beard alleges. Wells at 148:25–149:9. Although he also referred to "gross negligence on Samsung's part," Wells at 148:2–3, 148:8–10, he identified no statement that Samsung made negligently rather than intentionally. Beard's own testimony therefore confirms that its claims rest solely on allegedly intentional misconduct. Because Beard has offered no evidence that Samsung negligently supplied false information, Samsung is entitled to summary judgment on Count VIII.

**D. Alternatively, if a contract exists, the economic loss rule bars the claim.**

In the alternative, if the Court concludes that the Parties had a contract, the economic loss rule bars Beard's negligent-misrepresentation claim. This rule bars recovery in tort for economic losses related to failure to perform under a contract. *See Container Store, Inc. v. Fortna, Inc.*, 2021 WL 1250334, at *6 (N.D. Tex. Apr. 5, 2021). For a negligent misrepresentation claim to survive, "a plaintiff must establish an independent duty and an independent injury, both arising apart from contract." *Container Store, Inc. v. Fortna, Inc.*, 2021 WL 1250334, at *6 (N.D. Tex. Apr. 5, 2021). Beard cannot prove an independent duty nor an independent injury.

Beard identifies no duty independent of Samsung's contractual obligations. Every representation it relies on—tool readiness, crew size, labor rates, schedule, idle time, and payment—concerns the terms and performance of Beard's work on the Project. Dkt. 51 ¶¶ 12–16, 22–23, 38–40. Those are precisely the subjects the Parties addressed when they exchanged specific rate proposals and agreed to time-and-materials for demolition and unit rates for installation. Wells at 194:14–17; Declaration at ¶ 15. As set forth in Section I.A above, Samsung owed no duty to Beard when negotiating their contractual relationship.

Nor does Beard identify an independent injury. It seeks the same $8,133,126.63 under every count, including breach of contract, and its negligent misrepresentation count alleges "pecuniary losses as set forth above," *expressly referencing the same damages asserted in the other contract-related counts*. Dkt. 51 ¶¶ 54, 61, 66, 73, 76, 81, 87, 89. Because Beard "cannot establish an independent injury that is distinct from the economic losses recoverable under a breach of contract claim," its claim fails. *Sterling Chems., Inc. v. Texaco Inc.*, 259 S.W.3d 793, 798 (Tex. App.—Houston [1st Dist.] 2007, pet. denied).

### E. Beard cannot recover damages for the benefit of the bargain under negligent misrepresentation.

The damages that Beard seeks for negligent misrepresentation are also disallowed under Texas law. A plaintiff asserting negligent misrepresentation may recover only its pecuniary loss caused by reliance on the misrepresentation (such as out-of-pocket damages), and may not recover benefit-of-the-bargain damages or lost profits. *See Fed. Land Bank Ass'n of Tyler v. Sloane*, 825 S.W.2d 439, 442–43 (Tex. 1991) ("the damages recoverable for a negligent misrepresentation do not include the benefit of the plaintiff's contract with the defendant") (quoting Restatement (Second) of Torts § 552B (1977)); *D.S.A., Inc. v. Hillsboro Indep. Sch. Dist.*, 973 S.W.2d 662, 663–64 (Tex. 1998) (per curiam) (same). Beard has expressly alleged damages that are, by definition, benefit of the bargain damages. Specifically, Beard alleged that $2,406,865.77 of its $8,133,126.63 claim represents "a reasonable profit of 10%." *See* Original Petition, Dkt. 1, App. A at ¶ 13.[3] Beard's discovery responses confirm that those are the damages Beard seeks. *See* Beard's Response to Interrogatory No. 16 ("Beard directs Samsung to the allegations contained in paragraph 13 of the Complaint."), attached as **Exhibit 5**. Claims for such damages under a theory of negligent misrepresentation are not recoverable under Texas law.

## IV. Samsung is entitled to summary judgment on Beard's breach-of-contract claim (Count IV).

To prevail, Beard must show an oral contract—it is undisputed there is no written one, *see* Wells at 191:12–18; Webb at 247:14–17; Filla at 37:20–24—with "a clear and definite acceptance of all terms contained in the offer." *Hollywood Fantasy Corp. v. Gabor*, 151 F.3d 203, 210 (5th Cir. 1998) (citation omitted). Beard must also identify the "specific provision in the contract that

[3] Though Beard omitted this reference to a 10% profit or the $2,406,865.77 amount from its First Amended Complaint, Beard still seeks the exact same $8,133,126.63 (which includes the 10% profit). *See, e.g.*, Dkt. 51 ¶¶ 61, 66, 73, 81.

was breached." *Caine v. Wells Fargo Bank, N.A.*, 2018 WL 3195102, at *3 (S.D. Tex. June 8, 2018) (citations omitted). Beard fails to clear these hurdles. Beard alleges, in the alternative, an oral contract under which Samsung would pay Beard "a fair and reasonable amount for all labor and materials," and that Samsung breached by failing to pay "for the time and materials that it incurred." Dkt. 51 ¶¶ 69–72. But there is no record evidence of such a contract between the parties *with those terms*.

Beard's corporate representative maintained that a contract "did not exist" and that the Parties "never had a deal." Wells at 192:6–8, 195:25–196:2. The only pricing terms Beard's witnesses acknowledge are wholly consistent with Samsung's understanding of the agreement: time-and-materials for demolition and unit rates for installation, Wells at 194:14–17; Webb at 36:24–37:13, and Samsung paid Beard in accordance with those rates. Declaration at ¶ 15. No witness has identified any contractual term in which Samsung agreed to an open-ended "fair and reasonable" cost-reimbursement term that could support the damages alleged in the First Amended Complaint. Beard thus has identified no contractual term establishing how much Samsung was supposedly obligated to pay, for what services, and on what timeframe, nor any evidence that Samsung breached any such term. Beard has therefore not shown breach of an oral contract, as "[e]ssential terms generally include the time of performance, the price to be paid and the service to be rendered." *Coe v. Chesapeake Expl., L.L.C.*, 695 F.3d 311, 321 (5th Cir. 2012). Summary judgment is proper on Count IV.

## V. Samsung is entitled to summary judgment on Beard's request for attorneys' fees (Count IX) to the extent it rests on these claims.

"[A]ttorney's fees are not recoverable for prosecuting a fraud or negligent-misrepresentation claim." *Chevron Phillips Chem. Co. v. Kingwood Crossroads, L.P.*, 346 S.W.3d 37, 69 (Tex. App.—Houston [14th Dist.] 2011, pet. denied). Further, because Beard's breach-of-

contract claim fails as discussed *supra*, Beard cannot recover fees on that claim either. Samsung therefore requests summary judgment on Count IX to the extent it is premised on Counts I, II, IV, or VIII.

**PRAYER**

Samsung respectfully requests that the Court grant summary judgment in Samsung's favor on Beard's causes of action for fraud by nondisclosure (Count I), fraudulent inducement (Count II), breach of contract (Count IV), and negligent misrepresentation (Count VIII), and on Beard's request for attorneys' fees (Count IX) to the extent it is premised on those claims, and grant Samsung all other relief to which it may be justly entitled.

Dated: November 6, 2026

Respectfully submitted,

**DLA Piper LLP (US)**

*/s/ Brett D. Solberg*
Brett D. Solberg
Texas Bar No. 24070651
845 Texas Avenue, Suite 3800
Houston, Texas 77002
T: (713) 425-8482
F: (713) 425-8401
brett.solberg@us.dlapiper.com

Justin (Ilhwan) Park (*pro hac vice*)
500 Eighth Street, NW
Washington, DC 20004
T: (202) 799-4365
F: (202) 799-5385
justin.park@us.dlapiper.com

*Attorneys for Defendant/Counter-Plaintiff*
*Samsung Austin Semiconductor, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on November 6, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing via electronic mail to all counsel of record.

*/s/ Brett D. Solberg*
Brett D. Solberg